ACCEPTED
02-15-00131-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
5/11/2015 3:22:00 PM
DEBRA SPISAK
CLERK

## No. 02-15-00131-CV



# IN THE SECOND COURT OF APPEALS DISTRICT OF TEXAS AT FORT WORTH

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
05/11/2015 3:22:00 PM
DEBRA SPISAK
Clerk

### CARL D. WOODARD AND TIMOTHY D. WOODARD
Defendants/Appellants

v.

### ROTORCRAFT SERVICES GROUP, INC.
Plaintiff/Appellee

On Appeal from the 352nd District Court of Tarrant County, Texas
Cause No. 352-274417-14, Hon. Bonnie Sudderth and Mark Pittman, Presiding

## APPELLANTS' RESPONSE TO MOTION TO DISMISS

TO THE HONORABLE COURT:

Appellants, Carl D. Woodard and Timothy D. Woodard (the Woodards) hereby respond to the Motion to Dismiss Appeal (Motion to Dismiss) filed by Appellee, Rotorcraft Services Group, Inc. (Rotorcraft), showing it should be **DENIED**, as follows:

### A.   THE APPEAL IS NOT UNTIMELY.

Addressing Rotorcraft's two points in reverse order for simplicity, its argument that this appeal was brought too late is unfounded. Despite its prolixity,

what Rotorcraft's argument entirely hinges upon is that "Defendants' Motion to Vacate, Modify, Correct, or Reform the Judgment, or Alternatively for a New Trial" (Motion for New Trial) (Ex. C to the Motion to Dismiss) was not *really* what it says it was.[1] Rotorcraft conveniently fails to give not a hint of what the Motion for New Trial *should* have looked like, or contained, to actually *be* a valid motion for new trial.

The Woodards have found no case which held that "new grounds" have to be urged in a motion for new trial from earlier arguments before the trial court in order for the motion to constitute a motion for new trial, as far as appellate deadlines are concerned. Rotorcraft does not cite any either. Rotorcraft instead cites to *Barry v. Barry*, 193 S.W.3d 72 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Interestingly, *Barry* actually holds that a document filed as an "answer" actually *was* an "answer," as opposed to a motion for new trial which would have defeated jurisdiction. *Barry* is actually on point, however, in holding:

> A motion for new trial must, by its very nature, seek to *set aside an existing judgment and request relitigation of the issues*.

*Id.* at 74 (emphasis added; citation omitted). *Accord, Hull v. S. Coast Catamarans, L.P.*, 365 S.W.3d 35, 40 ("In a motion for new trial, a party asks the trial court to

---

[1] The Woodards take **great umbrage** with the suggestion that they were "trying to get a new judge." Obviously they had no control over the change of judgeship—they timely filed their Motion for New Trial without any consideration of who would end up being on the bench. Rotorcraft almost seems to argue that the Woodards were somehow *precluded* from exercising their right to bring the Motion for New Trial *because* of a change they had no control over.

*correct trial error* by granting a new trial.") (emphasis added; citations omitted).[2]

Although it is really too plain to require any argument that the Woodards were requesting correction of trial error and setting aside an existing judgment, the Woodards note the following excerpt from the Motion for New Trial:

> Even in the absence of a conclusive *judicial* admission, the *evidentiary* effect of the Demand, *conjoined* with Rotorcraft's *action* pursuant to that agreed "method" or "process," shows that there is no more than a scintilla of evidence to support any finding of lack of an agreement to use a prior-panel arbitrator....

> These cases show that, collectively, (a) the pleading of the agreement, and (b) the action pursuant to the agreement are conclusive that there was an agreement to use the "method" of selection of the arbitrator—one from the prior panel. At a minimum, there is no more than a scintilla of evidence to the contrary. The Judgment must therefore be vacated, modified, corrected, or reformed to vacate the Award; alternatively, a new trial must be had.

Motion for New Trial (Ex. C) at 4, 6. Therefore, Rotorcraft's contention that the Woodards' Motion for New Trial was really *not* such a motion is specious at best and should be denied.

Rotorcraft clouds the matter further by inferring that the Woodards could not seek a reconsideration of the Judgment (Ex. B) because it was untimely under the Federal Arbitration Act (FAA). But this assertion is itself predicated on the Motion for New Trial being something other than what it actually was. Of course

---

[2] Concerning the subject of footnote 1 *supra*, it might be noted that in *Hull*, two different judges were involved in the contested rulings, and the court held: "More than one judge, however, may exercise authority over a single case." 365 S.W.3d at 41 (citations omitted).

the Woodards could not institute some *new proceeding* seeking to vacate the Award of the arbitrator. However, they were certainly entitled to treat the Judgment confirming the Award as a *judgment like any other*, and therefore subject to the same post-judgment remedies as any other.[3] As Rotorcraft itself has otherwise repeatedly pointed out, "a judgment confirming (or modifying or correcting) an arbitration award is a final judgment like any other." *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 263 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing statutes). This applies to appellate deadlines. *See id. Cf. also America Life, Inc. v. Myer*, 440 S.W.3d 18 (Tex. 2014), pet. for cert. filed (litigation, including *several* appeals, continued for *ten years* past the arbitration award). So Rotorcraft's position is completely invalid.

Rotorcraft appears to take the position, nonetheless, that a "motion for new trial" is really in a *different* category, by citing to two federal cases, *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1339 (9th Cir. 1986), and *Halliburton Energy Servs. v. NL Indus.*, 618 F. Supp. 2d 614, 627 (S.D. Tex. 2009). The nuances of federal court procedure are not the same as Texas State Court procedure, so it is not at all clear that such authorities are applicable here. Be that as it may, the procedures involved in those two cases did *not* involve "motions for new trial" even under federal procedure.

---

[3] Leaving aside for the moment the question of whether the otherwise-available right of an *appeal* from a judgment is precluded by *agreement* in this case, to be addressed *infra*.

Rotorcraft opines *Lafarge* "address[es] situation *similar to motion for new trial under Federal Rule of Civil Procedure 60(b)* and concluding that final arbitration award could not be *collaterally* attacked." Motion to Dismiss at 14 (emphasis added). In fact, however, motions for new trial (or to alter or amend the judgment) are governed by Rule *59*, and have a 28-day limitation. Rule 60(b) is a *separate* "relief from a judgment" provision with completely different time periods and different grounds for relief. It is, in essence, a "collateral" proceeding from that in which the judgment was entered (more comparable to our "bill of review" under Texas procedure). And in *Halliburton*, a Rule 59 motion for new trial was also not involved. There is simply no basis for any holding that a party to an arbitration award is precluded from filing a motion for new trial under the FAA since a judgment confirming an arbitration award is a final judgment like any other.

Respectfully, Rotorcraft's Motion to Dismiss should be denied as it relates to timeliness of the appeal, because, contrary to Rotorcraft's two arguments, (a) the Motion for New Trial really was one, and (b) the Motion for New Trial was not a "collateral attack" on the Judgment.

## B.    THE SPA PROVISION DOES NOT PRECLUDE THIS APPEAL.

As shown in Ex. D to the Motion to Dismiss, the Stock Purchase Agreement (SPA) § 14.15 provides that an arbitration subject to the SPA "shall be non-appealable." SPA at 56. At first glance, this provision might be read to preclude

this appeal. However, both case law and common sense place restraints on the applicability or enforceability of that provision under the facts of this case.

Initially, for the SPA provision to even apply here, there must have been an arbitration *conducted as directed by the SPA*. If the arbitration was *not conducted pursuant to its provisions*, then the SPA § 14.15's rules as to arbitration (including that it would be "non-appealable") would not be applicable to it. Although this issue should more properly be relegated to briefing on the merits, a prime contention of the Woodards in this appeal is that the SPA § 14.15's requirements as to the *constitution of the arbitral body* were *not* followed in this case. SPA §14.15 clearly provides: "<u>Such arbitration shall be conducted by a *panel of three arbitrators*</u>...." *Id.* at 56 (emphasis added). As Rotorcraft would have to concur, this is not what happened. Consequently, this arbitration was not conducted in accordance with the SPA, so the improperly-constituted singe arbiter's Award is simply not subject to the SPA § 14.15's preclusion of an appeal.

Interestingly, Rotorcraft itself argued vociferously during the AAA arbitral selection process that such a three-person panel was mandatory, and that if the arbitral body was not so constituted, Rotorcraft would proceed in court to have the award vacated, *and would win such a contest*. See Ex. 1 and Ex. 2 to this Response (Woodards' Trial Ex's 10 and 12, respectively). The Woodards argued that a *subsequent* agreement had been reached to *modify* that SPA provision to use

a sole arbitrator *from the prior panel* that had presided over an earlier arbitration between these parties. See Motion Ex's A and C. This was substantiated by Rotorcraft's own admission in its original Demand in the instant arbitration. Ex. 3 to this Response (Woodards' Trial Ex. 5), page 3, ¶ 9. However, once this worked out to result in an arbitrator Rotorcraft did not like, Rotorcraft then decided to *contest* that modified agreement and insisted on the three-person panel under the SPA as the only agreement, on pain of vacatur. *See* Ex's 1 and 2 *supra.*

Despite the parties' positions, however, the American Arbitration Association (AAA) in a rogue decision *ultimately* constituted the arbitral body as consisting of a *single* arbitrator who was *not* on the prior panel, which is not what *anybody* claimed was the agreement. See Ex. 4 hereto (Woodards' Trial Ex. 15). The Woodards' made a standing objection that this was not in accordance with the parties' subsequent agreement, Ex. 5 hereto (Woodards' Trial Ex. 16), Rotorcraft having *already* given its standing objection to there not being a three-member panel (Ex. 1 at 2).

Following these events set in motion by the AAA, the Texas Supreme Court very recently ruled that when an arbitration body is not composed pursuant to the parties' agreement as to how the arbiter is to be constituted, then any award is *void* as without jurisdiction. *Americo Life, Inc. v. Myer*, 440 S.W.3d 18 (Tex. 2014), pet. for cert. filed. The Woodards, therefore, cannot be precluded from challenging the

Award on appeal as being void and of no effect, particularly on the very ground that the arbiter was not constituted as the parties agreed, under the SPA or otherwise. This is more properly a question that should be determined on the merits than in motion practice, but at a minimum this is a *prima facie* basis for finding jurisdiction over this appeal, subject to any further consideration on the point by the Court upon full briefing.

Also, under 9 U.S.C. § 10(a)(4) of the Federal Arbitration Act (FAA), a court may vacate an arbitration award "where the arbitrators exceeded their powers." Under *Americo*, arbitrators exceed their powers if they do not *have* any powers, as in when the panel (or single arbitrator) is not selected in accordance with the parties' agreed method of selection. As set forth above, there is really no question in this case but that the "method of selection" was not followed, whether (a) three as under the SPA, or (b) one from the prior panel as alleged by the Woodards. So in addition to this Award not being one covered by the SPA, further or alternatively, the Woodards have a *statutory* right under the FAA to have the Award vacated because the arbitrator exceeded its powers (having none, since there was no jurisdiction), and the right to judicial review on *that* FAA § 10(a)(4) question *cannot* be waived by agreement. *See*:

> As a preliminary matter, we must address whether we may even entertain this appeal because both parties expressly waived their rights of appeal in their stock purchase agreement. The arbitration provisions in the parties' agreement included a provision for arbitration finality:

"An award or determination of the arbitration tribunal shall be final and conclusive upon the parties, judgment thereon may be entered by any court of competent jurisdiction and no appeal thereof shall be made by the parties." A trial court's judgment is appealable notwithstanding such a provision when there is fraud, misconduct, or gross mistake. *Grissom v. Greener & Sumner Constr., Inc.*, 676 S.W.2d 709, 711 (Tex. App.--El Paso 1984, writ ref'd n.r.e.). **Further a waiver of appeal in the arbitration agreement does not preclude judicial review of matters concerning Texas Civil Practice and Remedies Code sections 171.088 and 171.091.** *See id.* (recognizing matters concerning articles 237 and 238 of the Revised Civil Statutes, the precursors to sections 171.088 and 171.091 of the Civil Practice and Remedies Code, **may be subjected to judicial review despite a waiver of appeal in the arbitration agreement**).

*Barsness v. Scott*, 126 S.W.3d 232, 237-238 (Tex. App.—San Antonio 2003, pet. denied) (emphasis added). *See also Circle Zebra Fabricators, Ltd. v. Americas Welding Corp.*, 2011 WL 1844443, 2011 Tex. App. LEXIS 1945 at *15-17 (Tex. App.—Corpus Christi March 17, 2011, orig. proceeding, no pet.).[4]

Rotorcraft seeks to distinguish *Barsness* on the basis that it acknowledged a right to challenge an arbitral award on *common law* grounds, now precluded after *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). This is disingenuous. *Barsness* clearly also holds that an appeal may not be precluded based on *statutory* grounds for challenging the award. *See supra*, 126 S.W.3d at 238. And *Circle Zebra*, which cites to *Barsness*, comes after *Hall St.*, and holds:

[T]he "no appeal" language does not affect Circle Zebra's ability to

---

[4] Unfortunately Appellants' counsels' law firm subscribes to LEXIS rather than WestLaw. The alternative WestLaw case citation is provided. The portion of the opinion referenced is in the "Conclusion" section at the close of the opinion.

vacate or modify an arbitration award on grounds listed in the Texas Arbitration Act **or the Federal Arbitration Act.**

*Circle Zebra*, 2011 WL 1844443, 2011 Tex. App. LEXIS 1945 at *16 (emphasis added; citations omitted). As also noted in *Circle Zebra*:

> *See In re Gulf Exploration, LLC*, 289 S.W.3d at 842 ("If a trial court compels arbitration when the parties have not agreed to it, that error can unquestionably be reviewed by final appeal.").

*Id.* This is directly analogous to the circumstance present here—the Woodards urge that they *did not agree* to arbitrate before a sole arbitrator who did not serve on the prior panel in the earlier arbitration between these parties. Whether they are *correct* or not on that point goes to the *merits* of the appeal, not the *right* to appeal.

> A recent federal court case reached a similar conclusion under the FAA:

> Is a non-appealability clause in an arbitration agreement that eliminates all federal court review of arbitration awards, including review under § 10 of the FAA, enforceable? We conclude that it is not.

*In re Wal-Mart Wage & Hour Employment Practices Litig. v. Class Counsel & Party to Arbitration*, 737 F.3d 1262, 1264 (9th Cir. 2013). The *Wal-Mart* court reasoned, *inter alia*, as follows:

> Just as the text of the FAA compels the conclusion that the grounds for vacatur of an arbitration award may not be supplemented, it also compels the conclusion that these grounds are not waivable, or subject to elimination by contract....

> Permitting parties to contractually eliminate all judicial review of arbitration awards would not only run counter to the text of the FAA, but would also frustrate Congress's attempt to ensure a minimum level of due process for parties to an arbitration. ... If parties could

contract around this section of the FAA, the balance Congress intended would be disrupted, and parties would be left without any safeguards against arbitral abuse.

*Id.* at 1267, 1268. Consequently, the Woodards have a right to pursue this appeal on at least one issue—the constitution of the arbiter.

Rotorcraft relies on *MACTEC, Inc. v. Gorelick*, 427 F.3d 821 (10th Cir. 2005), for the proposition that even if there may be no waiver of *some* judicial review (*i.e.*, by the District Court), there may nonetheless be a waiver of a right to review by the *Court of Appeals*. However, this is inconsistent with the Texas cases cited *supra*. Further, Rotorcraft is operating under a false premise in that regard. *MACTEC* stated that the agreement there *provided* for District Court review, but that this *District Court* review would be final. That is *not* what the SPA provides. It provides: "Such *arbitration* ... shall be non-appealable." Motion Ex. D at page 56 (emphasis added). This language comes squarely within the ambit of the *Wal-Mart* case as precluding *any* judicial review, which is a void provision. Rotorcraft cannot "rehabilitate" the provision to allow from *some* court review, just not by the Court of Appeals. It stands or falls as stated. So, while the Woodards believe the rationale of *Wal-Mart* is sounder than that of *MACTEC*[5], *MACTEC* also would not uphold *this* waiver-of-review provision in the SPA, which tracks *Wal-Mart*'s

---

[5] *See also Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 66 (2d Cir. 2003) ("Unlike arbitration, however, judicial review is not a creature of contract, and the authority of a federal court to review an arbitration award - or any other matter - does not derive from a private agreement.') (citation omitted).

provision rather than *MACTEC*'s.

The Court need go no further to deny the Motion to Dismiss. A clear ground of jurisdiction to entertain the appeal is shown. However, the Woodards do further note that they believe they have grounds to argue that the Award "exceeded the arbitrator's powers" under the FAA in another aspect as well, even if the arbiter were to be found to be "properly constituted" *arguendo* (which is certainly denied). Specifically, the same SPA that requires arbitration also requires on the same page in § 14.14 that "[t]his Agreement shall be governed and construed as to its validity, interpretation and effect by the laws of the State of Texas...." Motion to Dismiss Ex. D, page 56. The Texas Supreme Court in *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84 (Tex. 2011), in discussing *Hall St.*, stated:

> [A]s the Supreme Court noted, "the FAA lets parties tailor some, even many features of arbitration by contract, including the way arbitrators are chosen..., along with ... choice of substantive law."

*Nafta*, 339 S.W.3d at 93, citing *Hall St.*, 552 U.S. at 586. Thus, if the arbitrator simply *disregarded* plainly provided, explicit, and controlling Texas law and entered his own view of how he thought the case should turn out, then under *Nafta* he "exceeds his powers" because "an arbitrator's powers are determined by agreement of the parties." 339 S.W.3d at 95.

Again, this should be a matter which is resolved on the merits rather than via

a Motion to Dismiss.[6] Nonetheless, as "exceeds his powers" is a statutory ground on which judicial review is permitted regardless of a "non-appealable" clause, *Barsness v. Scott*, 126 S.W.3d at 237-238; *Circle Zebra*, 2011 WL 1844443, 2011 Tex. App. LEXIS 1945 at *15-17; *Wal-Mart*, 737 F.3d at 1264, *prima facie* jurisdiction is demonstrated on this ground as well.

**WHEREFORE**, the Woodards as Appellants pray that the Motion to Dismiss Appeal will in all things be **DENIED**, and that this appeal be permitted to proceed on the merits, as (a) the appeal is not untimely due to the valid Motion for New Trial, and (b) the non-appealable clause is either not applicable, cannot preclude review of whether the arbitrator was even agreed upon, or is unenforceable as applied to statutory grounds for review of the arbitration award.

---

[6] Since Rotorcraft has elected to attach the Woodards' arguments below to its Motion, for argument showing this total disregard of Texas law on key points, see Motion to Dismiss Ex. A at 20-24 and Ex. C at 14-24.

Respectfully submitted,

/s/Thomas F. Harkins, Jr.
Bruce L. James
State Bar No. 10538000
bjames@whitakerchalk.com

Thomas F. Harkins, Jr.
State Bar No. 09000990
tharkins@whitakerchalk.com

**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce St., Ste. 3500
Fort Worth, Texas 76102-4135
Phone: (817) 878-0500
Fax: (817) 878-0501

**ATTORNEYS FOR
DEFENDANTS/APPELLANTS
CARL D. WOODARD AND
TIMOTHY D. WOODARD**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Response is being served upon the following on this the 11th day of May, 2015:

Marshall M. Searcy, Esq.                                                        *By Email*
marshall.searcy@kellyhart.com

Derek Montgomery, Esq.
derek.montgomery@kellyhart.com

**KELLY, HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

**ATTORNEYS FOR PLAINTIFF,**
**ROTORCRAFT SERVICES GROUP, INC.**

/s/Thomas F. Harkins, Jr.
Thomas F. Harkins, Jr.

178657

# EXHIBIT 1

# KELLY  HART

MARSHALL M. SEARCY, JR.
marshall.searcy@kellyhart.com

TELEPHONE: (817) 878-3512
FAX: (817) 878-9280

August 30, 2013

***VIA EMAIL: BartonA@adr.org***

Mr. Andrew Barton
American Arbitration Association
18756 Stone Oak Parkway, Ste. 200
San Antonio, TX 78258

Re: Case No. 71-459-00304-13; *Rotorcraft Services Group, Inc. v. Timothy D. Woodard and Carl D. Woodard*

Dear Mr. Barton:

Claimant Rotorcraft Services Group, Inc. ("Rotorcraft") is in receipt of your August 30, 2013 email in which you state that "the AAA has determined that Justice Raul A. Gonzales should be contacted to determine his willingness and availability to serve prior to any other method considered."

Rotorcraft expressly objects to contacting Justice Gonzales because the AAA has no authority to do so—the parties' written agreement expressly provides for the selection of a three-member panel pursuant to the commercial arbitration rules.

Rotorcraft specifically objects to any arbitration procedure contrary to that set forth in the arbitration provision of the 2007 Stock Purchase Agreement ("SPA").

Rotorcraft specifically objects to any and all further proceedings in this case if one or more arbitrators are selected in a manner or method contrary to the parties' written agreement, as set forth in the SPA.

In *Americo Life, Inc. v. Myer*, Case No. 12-0739, the Texas Supreme Court recently granted a petition for review seeking affirmation of a Texas district court's order vacating an arbitrators' award where the AAA appointed an arbitrator contrary to the method approved and agreed to by the parties. There, the parties' arbitration agreement entitled each party to appoint one arbitrator that is a "knowledgeable, independent businessperson or professional." Americo appointed an arbitrator, but Myer objected on the ground that the arbitrator did not satisfy the AAA's "impartiality" requirement because the arbitrator had served on two earlier arbitration panels that resolved disputes under the contract. The AAA determined that a party-appointed arbitrator must be impartial, and therefore disqualified the arbitrator appointed by Americo. The AAA subsequently appointed a replacement arbitrator and assembled a three-member panel, which entered a $35 million award against Americo. On Americo's motion, the Texas trial court vacated the award because it was "void and ha[d] no binding effect" since it "was not issued by a properly appointed and authorized arbitration panel."

1529337_1



EXHIBIT
10
Woodard

The same principles at issue in *Americo Life* are at play in this case. That is, if the above-referenced case proceeds after the AAA selects an arbitrator in a manner not agreed to by the parties—and expressly objected to by Rotorcraft—any ultimate award is subject to being vacated by the trial court. The applicable law, the AAA rules, and public policy all prohibit the AAA from selecting an arbitrator in a manner contrary to the parties' written agreement.

Rotorcraft therefore objects to the course of action announced in your August 30, 2013 email. To the extent that the AAA denies Rotorcraft's objection, Rotorcraft hereby specifically requests a running objection to any and all future proceedings in the above-referenced case.

Sincerely,

Marshall M. Searcy, Jr.

cc:     Bruce L. James                              *Via Email: bjames@whitakerchalk.com*
        Thomas F. Harkins, Jr.                       *and tharkins@whitakerchalk.com*
        WHITAKER, CHALK, SWINDLE & SCHWARTZ PLLC
        301 Commerce Street, Suite 3500
        Fort Worth, Texas 76102


        Michael E. McCue                             *Via Email: mmccue@meadowscollier.com*
        Meadows, Collier, Reed, Cousins, Crouch &
        Ungerman, LLP
        901 Main Street, Suite 3700
        Dallas, Texas 75202


        Derek Montgomery (firm)

# EXHIBIT 2

# KELLY  HART

MARSHALL M. SEARCY, JR.
marshall.searcy@kellyhart.com

TELEPHONE: (817) 878-3512
FAX: (817) 878-9280

September 11, 2013

**_VIA EMAIL: BartonA@adr.org_**

Mr. Andrew Barton
American Arbitration Association
18756 Stone Oak Parkway, Ste. 200
San Antonio, TX 78258

Re: Case No. 71-459-00304-13; *Rotorcraft Services Group, Inc. v. Timothy D. Woodard and Carl D. Woodard*

Dear Mr. Barton:

Claimant Rotorcraft Services Group, Inc. ("Rotorcraft") is in receipt of your September 5, 2013 emails and Justice Raul A. Gonzales' executed Notice of Appointment and memorandum to you of the same date. By this letter, Rotorcraft hereby objects to the appointment of Justice Gonzales for the reasons specifically noted herein and those previously expressed in my August 22 and August 30, 2013 letters.

Rotorcraft expressly objected to contacting Justice Gonzales in the first place because the AAA had no authority to do so—the parties' written agreement expressly provides for the selection of a three-member panel pursuant to the commercial arbitration rules. Rotorcraft specifically objects to any arbitration procedure contrary to that set forth in the arbitration provision of the 2007 Stock Purchase Agreement ("SPA"). And Rotorcraft specifically objects to any and all further proceedings in this case if one or more arbitrators are selected in a manner or method contrary to the parties' written agreement, as set forth in the SPA.

Rotorcraft respectfully requests that the AAA's national review committee review the appointment of Justice Gonzales and reverse that decision. The correct course of action is to appoint a three-member panel, giving the parties an opportunity to strike and object to any arbitrators for whom they have an objection to serving as an arbitrator in this proceeding. In addition to being the correct course of action, it also has the benefit of being the prudent course. Appointing an arbitrator who served as a partially dissenting member in a prior arbitration between the parties is inherently unfair, against public policy, against AAA rules, and contrary to the parties' agreement.

1. **The SPA contains the only written arbitration agreement signed by all parties, and requires appointment of a three-member panel pursuant to the Regular Commercial Arbitration Rules.**

The AAA must appoint an arbitrator in accordance with the parties' agreement. *See* AAA Commercial Arbitration Rule L-2(b). The parties all agree the AAA should look to the

---

FORT WORTH OFFICE | 201 Main Street, Suite 2500 | Fort Worth, TX 76102 | Telephone: (817) 332-2500 | Fax:

AUSTIN OFFICE | 301 Congress, Suite 2000 | Austin, TX 78701 | Telephone: (512) 495-6400 | Fax: (512) 49

*Kelly Hart & Hallman, a Limited Liability Partnership | www.kellyhart.com*



EXHIBIT
12
Woodard

parties' agreement to determine the proper method for selecting arbitrators. *See* August 22, 2013 letter from Michael M. McCue to Andrew Barton, p. 1 ("[t]he [AAA] is to appoint an arbitrator in accordance with the parties' agreement."). Therefore, the only question is what the parties agreed to.

Here, the only written agreement signed by all parties requires appointment of a three-member panel through the normal AAA procedures. Section 14.15 of the SPA provides:

> [A]rbitration shall be conducted by a panel of three arbitrators selected pursuant to the commercial arbitration rules of the American Arbitration Association at a time and place mutually agreeable to the parties and the arbitrators within the State of Texas.

CLAIMANT ROTORCRAFT SERVICES GROUP INC.'S AMENDED DEMAND FOR ARBITRATION (the "DEMAND"), Ex. A, § 14.15 at WAH_04328. And section 15(a) of the SPA required that any amendment to that agreement be in writing and signed by all parties.[1] *See* DEMAND, Ex. A, § 14.6 at WAH_04327. Respondents Timothy D. Woodard and Carl Woodard (collectively, the "Woodards") do not contest the validity of the SPA. The Woodards do not argue that the terms stated therein were the terms originally agreed to by the parties. Instead, they merely argue that the parties reached a subsequent agreement that modified the prior terms. That is false.

a.      *The letter and email correspondence between the parties do not evince an agreement for the selection of arbitrators.*

The Woodards' August 15, 2013 letter suggests the "parties previously agreed to arbitrate . . . before Marshall Doke, and if he was not available or refused to serve as arbitrator, that the claims would be arbitrated before Raul A. Gonzales, Jr." The Woodards' August 22, 2013 letter makes a similar suggestion. Those suggestions are demonstrably false.

The AAA need only look at the exhibits offered in support of those suggestions to understand that each of the documents allegedly evincing an agreement are nothing more than *proposals*. They each reflect an ongoing negotiation that was never finalized:

- Attachment A to Mr. McCue's August 22, 2013 letter is an April 16, 2013 email string where the last communication—one coming from the Woodards' counsel—reveals that the Woodards were still conferring on what they themselves would agree to, and were questioning as to whether Rotorcraft would object to Justice Gonzales.

- Attachment B to Mr. McCue's August 22, 2013 letter is an April 19, 2013 email from Rotorcraft's counsel inquiring whether the Woodards "would agree to (1) utilizing one arbitrator (Marshall Doke), who was (2) already familiar with the matter. . . . When you are able, would you let me know on this."

---

[1] The Woodards' August 22, 2013 letter argues that an unsigned agreement may be enforceable because Rule 11 allegedly does not apply. Rotorcraft does not rely on Rule 11 for the enforceability of the parties' agreement to arbitrate. Rotorcraft relies on the written terms of a contract the parties agreed to, which unquestionably require that any amendment be made in writing. The Woodards agreed to, and relied upon, the same language when the parties previously submitted claims to arbitration. Irrespective of Rule 11, the parties contractually agreed that any modification regarding the arbitration provision must be in writing and signed by the parties. Because no such signed writing exists here (the Woodards certainly cannot cite any evidence thereof), the SPA is the sole agreement concerning arbitration.

- Attachment C to Mr. McCue's August 22, 2013 letter is an April 22, 2013 email from the Woodards' counsel in which he inquires whether an alternative arbitrator selection process is agreeable to Rotorcraft. Specifically, the Woodards ask whether Rotorcraft would agree to appoint Marshall Doke if available, or Justice Gonzales if Mr. Doke is not available or refuses to serve.

- Attachment D to Mr. McCue's August 22, 2013 letter is an April 26, 2013 letter from Rotorcraft's counsel proposing, amongst other terms, that the parties agree to appoint Marshall Doke or, if Mr. Doke is unavailable or refuses to serve, to appoint Justice Gonzales. The letter included signature blocks for the Woodards' counsel to agree to the terms thereof. As evidenced by the blank nature of those signature blocks on Attachment D, the Woodards never agreed to those terms. Instead, they rejected the offer when they subsequently proposed alternative terms.

- Attachment E to Mr. McCue's August 22, 2013 letter is a May 1, 2013 letter from the Woodards' counsel which rejected the proposed terms from Rotorcraft's April 26, 2013 letter and proposed alternate forms. The letter included signature blocks for both Rotorcraft and Respondent Tim Woodard's counsel. As evidenced by the blank nature of those signature blocks on Attachment E, Rotorcraft never agreed to those terms.

- Attachment F to Mr. McCue's August 22, 2013 letter is a May 10, 2013 letter from Rotorcraft's counsel to Mr. Doke indicating that the parties "have agreed, as a cost-saving measure, to entrust resolution to a single arbitrator outside the American Arbitration Association, specifically, you." The letter makes no mention of any other potential arbitrator. Quite clearly, this letter does not evince an agreement to appoint Justice Gonzales. If Attachment F was a written agreement concerning the method for appointment of an arbitrator, it was only an agreement to use Mr. Doke and no one else. And when Mr. Doke elected not to serve as a sole arbitrator in this proceeding, the parties' only remaining agreement concerning arbitration would have been that found in the SPA.

Nothing in the Woodards' allegedly supporting documents reveal an agreement to appoint Justice Gonzales. They reflect a negotiation process for the appointment of alternative arbitrators that was never finalized. The only written, signed agreement regarding arbitration between the parties is that found in section 14.15 of the SPA. The Woodards do not refute the validity of the SPA or section 14.15 thereof. As the only binding agreement between the parties, the AAA must follow the arbitrator-appointment procedures set forth in section 14.15 of the SPA.

b.  *Rotorcraft's live demand makes clear that Rotorcraft did not agree to appoint Justice Gonzales.*

In its live arbitration demand, Rotorcraft submits its claim "for arbitration pursuant to the parties' agreement in the SPA." *See* DEMAND, ¶ 9. The live pleading makes no mention of an agreement to appoint Justice Gonzales. To the contrary, the live pleading "specifically objects to any arbitration procedure contrary to that set forth in the arbitration provision of the SPA . . . [and] specifically objects to proceeding with arbitration if any of the procedures set forth in the SPA are not strictly adhered to." *Id.* at ¶ 12. Thus, Rotorcraft's live pleading indicates that

(1) the arbitrator-appointment process should be that detailed in the SPA, and (2) Rotorcraft objects to the appointment of Justice Gonzales—it certainly does not agree to it.

While Rotorcraft amended its original demand, the amendment has no effect on the review panel's determination of whether an agreement to appoint Justice Gonzales exists. The original demand did not state that the parties agreed to appoint Justice Gonzales.[2] Instead, it reflected a desire for a successive appointment process whereby Marshall Doke, or alternatively Tom Collins, or alternatively Justice Raul Gonzales be appointed to arbitrate. But that was part of a desire in negotiation—one which never came to fruition. As the Woodards themselves acknowledge, the language in the original demand did not reflect an agreement between the parties. *See* Mr. McCue's August 22, 2103 letter to Andrew Barton, p. 2. Instead, the Woodards simply argue the original demand evinces an agreement "to utilize a sole arbitrator." *See* Mr. McCue's August 22, 2103 letter to Andrew Barton, p. 2.

Rotorcraft is still willing to arbitrate before a sole arbitrator, if that arbitrator is appointed pursuant to the AAA's normal commercial arbitration rules (as required in the SPA). But there is no agreement to do so. Without an agreement to the contrary, the AAA is left with no choice but to follow the parties' agreement in the SPA and subsequently appoint a three-member panel pursuant to the AAA's normal commercial arbitration rules.

**2. If no agreement concerning appointment of arbitrators exists, the Procedures for Large, Complex Commercial Disputes require appointment of arbitrators pursuant to the Regular Commercial Arbitration Rules.**

If, for some reason, the AAA determines section 14.15 of the SPA is not the governing agreement concerning appointment of arbitrators, then the AAA must appoint arbitrators pursuant to Rules L-2(b) and R-11. Rule L-2(b) provides that if the parties have not reached agreement on the method for appointing arbitrators, "the AAA *shall* appoint arbitrators from the Large, Complex Commercial Case Panel in the manner provided in the Regular Commercial Arbitration Rules." PROCEDURES FOR LARGE, COMPLEX COMMERCIAL DISPUTES, Rule L-2(b) (emphasis added). And the Regular Commercial Arbitration Rules provide that the arbitrator shall be appointed by the AAA sending, simultaneously to each party, an identical list of 10 (unless the AAA believes another number is appropriate) names of persons chosen from the National Roster. *See* REGULAR COMMERCIAL ARBITRATION RULES, Rule R-11(a).

These rules mandate appointment of arbitrators by providing a list of 10 or more potential arbitrators from the Large, Complex Commercial Case Panel. There is simply no discretion to select and appoint a specific arbitrator. And there is certainly no discretion to select and appoint a specific arbitrator that one party expressly objects to.

**3. The AAA has no authority to appoint a specific arbitrator.**

Rotorcraft respectfully submits that the AAA cannot appoint Justice Gonzales, or anyone else, absent instruction to do so from all the parties. The Code of Ethics for Arbitrators in

---

[2] And even if the original demand did indicate an agreement to appoint Justice Gonzales (it did not), statements "contained in superseded pleadings are not conclusive and indisputable judicial admissions." *Sosa v. Central Power & Light,* 909 S.W.2d 893, 895 (Tex. 1995); *see also Tyra v. Bob Carroll Constr. Co.,* 618 S.W.2d 853, 856 (Tex. Civ. App.—El Paso 1981), *aff'd,* 639 S.W.2d 690 (Tex. 1982) (holding that when a party files an amended pleading, statements made in earlier pleadings are no longer binding on the pleading party, who is free to subsequently dispute the alleged facts contained in the earlier pleading).

Commercial Disputes provides that "arbitrators should, after careful deliberation, decide all issues submitted for determination. *An arbitrator should decide no other issues.*" CODE OF ETHICS FOR ARBITRATORS IN COMMERCIAL DISPUTES, Canon V(A) (emphasis added). And "[a]n arbitrator should not delegate the duty to decide to any other person." *Id.* at Canon V(C). The parties have not "submitted for determination" the issue of whether an agreement concerning the appointment of arbitrators exists and, if so, the terms of such agreement. It would therefore be unethical for the AAA to make any such determination. *See id.* at Canon V(A).

4.      **If the AAA does appoint a specific arbitrator, it is likely that any subsequent award will be vacated.**

Because Rotorcraft has not agreed to the appointment of Justice Gonzales and strongly objects to any and all future proceedings if his appointment is affirmed by the national review committee, Rotorcraft will pursue a motion to vacate should the proceeding result in an arbitration award in favor of the Woodards. And based on the current rules, as well as Texas Supreme Court's recent decision to grant petition for review in an analogous case, any motion to vacate an award in favor of the Woodards is likely to be granted.

In *Americo Life, Inc. v. Myer*, Case No. 12-0739, the Texas Supreme Court recently granted a petition for review seeking affirmation of a Texas district court's order vacating an arbitrators' award where the AAA appointed an arbitrator contrary to the method approved and agreed to by the parties. There, the parties' arbitration agreement entitled each party to appoint one arbitrator that is a "knowledgeable, independent businessperson or professional." Americo appointed an arbitrator, but Myer objected on the ground that the arbitrator did not satisfy the AAA's "impartiality" requirement because the arbitrator had served on two earlier arbitration panels that resolved disputes under the contract.[3] The AAA determined that a party-appointed arbitrator must be impartial, and therefore disqualified the arbitrator appointed by Americo. The AAA subsequently appointed a replacement arbitrator and assembled a three-member panel, which entered a $35 million award against Americo. On Americo's motion, the Texas trial court vacated the award because it was "void and ha[d] no binding effect" since it "was not issued by a properly appointed and authorized arbitration panel."

The same principles at issue in *Americo Life* are at play in this case. That is, if this arbitration is conducted by Justice Gonzales, any ultimate award is subject to being vacated by the trial court. The applicable law, the AAA rules, and public policy all prohibit the AAA from selecting an arbitrator in a manner contrary to the parties' written agreement.

5.      **Justice Raul Gonzales—a Dissenting Member to the Prior Arbitration Award—is Disqualified Under AAA Rule R-17.**

Rotorcraft objects to Justice Raul Gonzales serving as an arbitrator in this proceeding because the parties have not agreed to the appointment of a non-neutral arbitrator and Justice Gonzales is subject to disqualification for one or more of the reasons set forth in AAA Rule R-17 and other applicable law.

---

[3] This same argument should extend to disqualify Justice Gonzales, who served on a prior arbitration panel for a dispute between the same parties. That arbitration proceeding resulted in an award favoring Rotorcraft. However, Justice Gonzales did not fully join the other two arbitrators in the majority opinion. Justice Gonzales concurred in the result but dissented in part. Because he was not in full agreement with the prior panel, the argument espoused in *Americo Life* is particularly instructive here.

On April 27, 2011, an arbitration panel including Justice Raul Gonzales, Marshall Doke, and Tom Collins entered an Award of Arbitrators (the "Prior Award") in Case No. 71-132-Y-00024-11. Rotorcraft was the Claimant and the Woodards were Respondents in that proceeding.[4] The Prior Award entered relief in Rotorcraft's favor (and against the Woodards) on claims for a declaratory judgment, breach of contract, breach of warranty, fraud, fraudulent inducement, and conspiracy. Justice Gonzales entered a concurring and dissenting opinion in the Prior Award—concurring on the breach of contract and breach of warranty claims, but dissenting on the fraud, fraudulent inducement and conspiracy claims.

Justice Gonzales' service in rendering the Prior Award, and his dissenting opinion, disqualify him under AAA Rule R-17. That rule requires that any arbitrator be "impartial and independent" and "shall be subject to disqualification for (i) partiality or lack of independence, (ii) inability or refusal to perform his or her duties with diligence and in good faith, and (iii) any grounds for disqualification provided by applicable law." AAA Commercial Arbitration Rule R-17(a). Where an arbitrator served as a neutral arbitrator in a prior panel and entered a dissenting opinion in that prior proceeding, the AAA Rules authorize disqualifying him under the "partiality or lack of independence" standard. *See, e.g., Myer v. Americo Life, Inc.*, 371 S.W.3d 537, 545 (Tex. App.—Dallas 2012, pet. granted).

Here, Justice Gonzales should be disqualified because the Woodards defensively plead in a manner requesting that the arbitrator sit in judgment of the Prior Award and, potentially, amend or clarify it. A neutral, impartial and independent arbitrator would be left to examine only the face of the Prior Award and would be bound by the majority's opinion—confirmed by the Texas state district court and, therefore, a final judgment. Justice Gonzales, however, is uniquely situated to go beyond the face of the Prior Award and the actual record.[5] Unlike any neutral arbitrator, Justice Gonzales would have an opportunity to expound upon—and potentially adopt—his dissenting opinion as a majority here. The Woodards presumably desire Justice Gonzales for that very reason. Their Answering Statements undoubtedly call the arbitrator to sit in judgment of the Prior Award. For example, the Woodards argue Rotorcraft is prohibited from recovering some or all of its claimed indemnifiable losses pursuant to the doctrine of "arbitration and award of April 27, 2011." *See* RESPONDENT CARL WOODARD'S ANSWERING STATMENET TO CLAIMANT'S DEMAND FOR ARBITRATION, p. 3, ¶ 4(g). The Woodards' Answering Statements also pleads "that the SPA is ambiguous as to what an indemnity claim is." *Id.* at p. 3, ¶ 4(f). They do so despite the Prior Award's clear findings, conclusions and declarations on Indemnifiable Losses[6]—all of which the Woodards agreed to subsequently confirm, without objection, through the Texas state district court. The Woodards further contend Rotorcraft's claims are barred by the doctrines of res judicata, collateral estoppel and judicial estoppel. *See id.* at p. 3, ¶¶ 4(c), (h), (i). Each of these plead affirmative defenses request the arbitrator to sit in judgment of the Prior Award—a final judgment. Appointing a dissenting member to the Prior Award as an arbitrator in this proceeding runs afoul of all notions of fundamental fairness.

---

[4] There were three additional Respondents in that case—Lisa M. Hall, Sandpiper Airport Inn, Inc., and Woodard Aviation Holdings, Ltd.

[5] There is no transcript of the prior arbitration hearing, so Justice Gonzales would have the unique knowledge of the evidence received at the multi-day arbitration hearing.

[6] These included stipulations entere by the Woodards themselves concerning their liability for Indemnifiable Losses and the meaning of the term "Indemnifiable Losses." *See, e.g.*, Prior Award, p. 11, at Conclusions of Law 13 and 14 (stipulating that "'Indemnifiable Losses' under the SPA include losses, liabilities, claims, demands (including any governmental penalty or punitive damages), lost profits damages, penalties, and settlements" and that "[t]he full scope of the term 'Indemnifiable Loss' is set forth in the 'Definitions' preamble of the SPA.").

For all of the foregoing reasons, Rotorcraft therefore objects to the appointment of Justice Raul Gonzales and respectfully requests that the national review committee disqualify him from serving in this proceeding. Rotorcraft respectfully requests that the AAA appoint a three-member panel of arbitrators who shall be selected pursuant to the AAA's normal commercial arbitration rules. To the extent that the AAA denies Rotorcraft's objection, Rotorcraft hereby specifically requests a running objection to any and all future proceedings in the above-referenced case.

Sincerely,

Marshall M. Searcy, Jr.

cc: Bruce L. James                                    *Via Email: bjames@whitakerchalk.com*
    Thomas F. Harkins, Jr.                                *and tharkins@whitakerchalk.com*
    WHITAKER, CHALK, SWINDLE & SCHWARTZ PLLC
    301 Commerce Street, Suite 3500
    Fort Worth, Texas 76102

    Michael E. McCue                                 *Via Email: mmccue@meadowscollier.com*
    Meadows, Collier, Reed, Cousins, Crouch &
    Ungerman, LLP
    901 Main Street, Suite 3700
    Dallas, Texas 75202

    Derek Montgomery (firm)

# EXHIBIT 3

# KELLY  HART

DEREK MONTGOMERY
derek.montgomery@kellyhart.com

TELEPHONE: (817) 878-3540
FAX: (817) 878-9280

May 28, 2013

**_VIA CMRRR 7013 0600 0001 7052 6024_**

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Re:     *Rotocraft Services Group, Inc. v. Timothy D. Woodard and Carl D. Woodard*

To Whom It May Concern:

In preparing your files for a new proceeding to be filed pursuant to the Commercial Rules of the AAA, please find the enclosed documents:

1.     Demand for Arbitration for Timothy D. Woodard;

2.     Demand for Arbitration for Carl D. Woodard;

3.     Demand for Arbitration; and

4.     The pages of the May 10, 2007 Stock Purchase Agreement containing the arbitration provision.

Thank you for your attention to this matter. Please contact me at your earliest convenience if you need anything further

Sincerely,

Derek Montgomery

DLM/kdp
Enclosure

1491822_1

**EXHIBIT**
5
Woodard



**American Arbitration Association**
*Dispute Resolution Services Worldwide*

## COMMERCIAL ARBITRATION RULES
(ENTER THE NAME OF THE APPLICABLE RULES)
### Demand for Arbitration

| | |
|---|---|
| **MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* □  *There is no additional administrative fee for this service.* | |

| Name of Respondent<br>Timothy D Woodard | Name of Representative (if known)<br>Bruce L. James |
|---|---|
| Address:<br>3925 Stoneshire Court | Name of Firm (if applicable):<br>Whitaker, Chalk, Swindle & Sawyer, LLP |
| | Representative's Address<br>301 Commerce Street, Suite 3500 |

| City<br>Fort Worth | State<br>TX | Zip Code<br>76179 | City<br>Fort Worth | State<br>TX | Zip Code<br>76102 |
|---|---|---|---|---|---|
| Phone No. | Fax No. | | Phone No.<br>817-878-0526 | | Fax No.<br>817-878-0501 |
| Email Address: | | | Email Address:<br>bjames@whitakerchalk.com | | |

The named claimant, a party to an arbitration agreement dated May 10, 2007                    , which provides for arbitration under the Commercial                    Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE
See attached Demand for Arbitration. Claimant would also note that the parties have agreed to arbitrate the matter before a single arbitrator in Fort Worth, Texas.

| Dollar Amount of Claim  $4,000,000.00 | Other Relief Sought:  ☒ Attorneys Fees    ☒ Interest<br>☒ Arbitration Costs  ☐ Punitive/ Exemplary  ☐ Other _____ |
|---|---|

Amount Enclosed $_____   In accordance with Fee Schedule:   ☐Flexible Fee Schedule   ☒Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
The parties would prefer that Marshall Doke serve as arbitrator since he previously served on a panel which entered the declaratory judgment upon which Claimant now seeks specific, quantified Indemnifiable Losses.

Hearing locale Fort Worth, Texas _____   (check one) ☒ Requested by Claimant   ☐ Locale provision included in the contract

| Estimated time needed for hearings overall:<br>_____ hours or ____2.00____ days | Type of Business:  Claimant Helicopter service and completion _____<br>Respondent Former owner of business _____ |
|---|---|

Is this a dispute between a business and a consumer?     ☐Yes  ☒No
Does this dispute arise out of an employment relationship?    ☐Yes  ☒No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)   Date: 5/28/13 | Name of Representative<br>Marshall Searcy and Derek Montgomery |
|---|---|
| Name of Claimant<br>Rotorcraft Services Group, Inc. | Name of Firm (if applicable)<br>Kelly Hart & Hallman LLP |
| Address (to be used in connection with this case):<br>4001 N Main Street | Representative's Address:<br>201 Main Street, Suite 2500 |

| City<br>Fort Worth | State<br>TX | Zip Code<br>76106 | City<br>Fort Worth | State<br>TX | Zip Code<br>76102 |
|---|---|---|---|---|---|
| Phone No. | Fax No. | | Phone No.<br>(817) 332-2500 | | Fax No.<br>(817) 878-9740 |
| Email Address: | | | Email Address:<br>marshall.searcy@kellyhart.com  derek.montgomery@kellyhart.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online.  AAA Case Filing Services can be reached at 877-495-4185



American Arbitration Association
*Dispute Resolution Services Worldwide*

## COMMERCIAL ARBITRATION RULES
(ENTER THE NAME OF THE APPLICABLE RULES)
### Demand for Arbitration

**MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box.* ☐ *There is no additional administrative fee for this service.*

| Name of Respondent<br>Carl D Woodard | | | Name of Representative (if known)<br>Michael E. McCue | | |
|---|---|---|---|---|---|
| Address:<br>3925 Westway Terrace | | | Name of Firm (if applicable):<br>Meadows, Collier, Reed, Cousins, Crouch & Ungerman, LLP | | |
| | | | Representative's Address<br>901 Main Street, Suite 3700 | | |
| City<br>Fort Worth | State<br>TX | Zip Code<br>76179 | City<br>Dallas | State<br>TX | Zip Code<br>75202 |
| Phone No. | Fax No. | | Phone No.<br>214-749-2460 | | Fax No.<br>214-747-3732 |
| Email Address: | | | Email Address:<br>mmccue@meadowscollier.com | | |

The named claimant, a party to an arbitration agreement dated May 10, 2007 _____, which provides for arbitration under the Commercial _____ Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

**THE NATURE OF THE DISPUTE**
See attached Demand for Arbitration. Claimant would also note that the parties have agreed to arbitrate the matter before a single arbitrator in Fort Worth, Texas.

| Dollar Amount of Claim $ 4,000,000.00 | Other Relief Sought: ☒ Attorneys Fees    ☒ Interest<br>☒ Arbitration Costs ☐ Punitive/ Exemplary ☐ Other _____ |
|---|---|

Amount Enclosed $ _____    In accordance with Fee Schedule:  ☐Flexible Fee Schedule    ☒Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
The parties would prefer that Marshall Doke serve as arbitrator since he previously served on a panel which entered the declaratory judgment upon which Claimant now seeks specific, quantified indemnifiable Losses.

Hearing locale Fort Worth, Texas _____    (check one) ☒ Requested by Claimant   ☐ Locale provision included in the contract

| Estimated time needed for hearings overall:<br><br>_____ hours or ____2.00____ days | Type of Business:  Claimant Helicopter service and completion _____<br><br>Respondent Former owner of business _____ |
|---|---|

Is this a dispute between a business and a consumer?      ☐Yes  ☒No
Does this dispute arise out of an employment relationship?   ☐Yes  ☒No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| Signature (may be signed by a representative)    Date:<br>~~signature~~    5/28/13 | Name of Representative<br>Marshall Searcy and Derek Montgomery |
|---|---|
| Name of Claimant<br>Rotorcraft Services Group, Inc. | Name of Firm (if applicable)<br>Kelly Hart & Hallman LLP |
| Address (to be used in connection with this case):<br>4001 N Main Street | Representative's Address:<br>201 Main Street, Suite 2500 |

| City<br>Fort Worth | State<br>TX | Zip Code<br>76106 | City<br>Fort Worth | State<br>TX | Zip Code<br>76102 |
|---|---|---|---|---|---|
| Phone No. | Fax No. | | Phone No.<br>(817) 332-2500 | | Fax No.<br>(817) 878-9740 |
| Email Address: | | | Email Address:<br>marshall.searcy@kellyhart.com derek.montgomery@kellyhart.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185

ARBITRATION PROCEEDING

| ROTORCRAFT SERVICES GROUP, INC., | § | |
|---|---|---|
| | § | |
| Claimant, | § | |
| | § | |
| v. | § | ARBITRATION |
| | § | PROCEEDING |
| CARL D. WOODARD & TIMOTHY D. | § | |
| WOODARD, | § | |
| | § | |
| Respondents. | § | |

## CLAIMANT ROTORCRAFT SERVICES GROUP INC.'S DEMAND FOR ARBITRATION

Claimant Rotorcraft Services Group Inc. ("Rotorcraft") submits this Demand for Arbitration against Respondents Carl D. Woodard and Timothy D. Woodard (collectively, "Respondents").

### INTRODUCTION

1. Claimant Rotorcraft seeks recompense for the Indemnifiable Losses incurred as a result of Respondents' criminal, fraudulent, and deceptive conduct. Respondents Carl and Timothy Woodard (the "Woodards") were the prior owners of Texas Aviation Services, Inc. ("TAS")[1] – a company that repaired and refurbished helicopters for private companies, individuals, and the United States government. Rotorcraft bought the assets of TAS from the Woodards through a 2007 Stock Purchase Agreement ("SPA") whereby the Woodards received approximately $8,000,000 plus other forms of consideration. Unbeknownst to Rotorcraft at the time it entered into the SPA, the Woodards had fraudulently invoiced the United States government for hundreds of thousands of dollars of work that was never performed under a contract to refurbish numerous Blackhawk helicopters. The Woodards had taken similar actions with respect to contracts for the repair and refurbishment of other helicopters owned by private

---

[1] In September 2010, TAS was renamed as RSG Aviation, Inc. For purposes of clarity, Rotorcraft continues to refer to that company as TAS.

CLAIMANT ROTORCRAFT SERVICES GROUP INC.'S DEMAND FOR ARBITRATION - PAGE 1

companies and individuals. The Woodards concealed this fraudulent conduct from Rotorcraft. In fact, the SPA through which the Woodards received approximately $8,000,000 included several representations that they had not engaged in such conduct.

2. Sometime after the 2007 SPA, the U.S. Government began investigating the Woodards and TAS concerning time billed for work allegedly done on the refurbishment of Blackhawk helicopters. In July 2010, Lisa Hall (Tim Woodard's step-daughter and a former Vice President of TAS) pled guilty to federal fraud charges and testified that the Woodards instructed her to markup the number of hours billed for work on the Blackhawk helicopters and for other civil aircraft billings.

3. Up and until Lisa Hall's testimony, the Woodards had continuously maintained their innocence in the matters investigated by the U.S. Government. Armed with conclusive proof otherwise, Rotorcraft filed suit on September 10, 2010, seeking a declaratory judgment that it was entitled to its Indemnifiable Losses caused by the Woodards fraudulent and criminal conduct, and asserting other causes of action. All parties agreed to arbitrate the issues before a panel of three arbitrators selected pursuant to the AAA rules and procedures. The Arbitrators entered an award on April 27, 2011, finding, *inter alia*, that Rotorcraft was entitled to its Indemnifiable Losses at such time as they may be determined with reasonable certainty. The Arbitrators found the Woodards jointly and severally liable for all such Indemnifiable Losses.

4. The Woodards elected not to make a motion to amend or vacate the Arbitrators' Award. Instead of making such a motion, the Woodards executed an Agreed Motion to Confirm the Arbitrators' Award to be entered by the 17th District Court for Tarrant County, Texas. The 17th District Court subsequently granted that motion, and entered an Agreed Order Confirming the Arbitrators' Award, which is now a final judgment (the "Final Judgment").

5. Final judgment in hand, Rotorcraft sent the Woodards indemnification demands seeking specific payments for certain Indemnifiable Losses. At the Woodards' request, Rotorcraft sent numerous, detailed documentation substantiating each of the Indemnifiable Losses. In direct contravention of the Final Judgment and the Arbitrators' Award, the Woodards have failed to pay Rotorcraft a single $.01 for its Indemnifiable Losses. The Woodards admit that at least some of the demanded amounts are, in fact, Indemnifiable Losses. Nevertheless, they refuse to pay Rotorcraft. Rotorcraft files this Demand seeking an order requiring that the Woodards pay Rotorcraft $3,458,344.22 for the Indemnifiable Losses noticed to date.

## PARTIES

6. Rotorcraft Services Group, Inc. is a Delaware corporation with its principal place of business at 3901 North Main Street, Fort Worth, Texas 76106.

7. Carl Woodard is an individual who resides at 3925 Westway Terrace, Fort Worth, Texas 76179.

8. Tim Woodard is an individual who resides at 3925 Stoneshire Court, Fort Worth, Texas 76179.

## THE PARTIES AGREE TO ARBITRATE THESE CLAIMS BEFORE A SOLE ARBITRATOR

9. The parties to this proceeding have agreed to submit this Demand to a single arbitrator, notwithstanding the SPA's language otherwise requiring a panel of three arbitrators parties' prior agreement to arbitrate claims before a panel of three arbitrators. Specifically, the parties have agreed that Rotorcraft's Indemnifiable Loss claims shall be arbitrated before one of the three arbitrators who conducted the prior arbitration between the parties—Marshall Doke, Tom Collins, and Raul A. Gonzalez. The parties have agreed that their preference would be for Marshall Doke to arbitrate the present claim. If Mr. Doke is unavailable, Rotorcraft requests that

Tom Collins arbitrate the present claim. If Mssrs. Doke and Collins are both unavailable, the parties request that Raul A. Gonzalez arbitrate the present claim.

10. If Mssrs. Doke, Collins and Gonzalez are all unavailable to serve as the Arbitrator, however, Rotorcraft submits this claim for arbitration before a sole arbitrator to be selected pursuant to the commercial arbitration rules of the American Arbitration Association at a time as soon as practicable in Fort Worth, Texas.

## BACKGROUND FACTS

### A. Rotorcraft Conducts Business at Meacham Airport.

11. Rotorcraft is a Fort Worth company that occupies more than 85,000 square feet of hangar space at Fort Worth Meacham International Airport ("Meacham Airport"). Rotorcraft provides completions, modifications, maintenance, painting, interiors, cabinetry, component overhaul, and parts distribution on the AgustaWestland, Bell Helicopter TEXTRON and Eurocopter product lines under its FAA Certified Repair Station. Rotorcraft is an approved Customer Service Facility for helicopters manufactured by both AgustaWestland and Bell Helicopter.

### B. Rotorcraft Purchases TAS From the Woodards for More than $8,000,000 in 2007.

12. In February 2007, Rotorcraft submitted a letter of intent to acquire TAS from the Woodards.[2] Rotorcraft subsequently conducted a due diligence review of TAS, the results of which made abundantly clear that the findings and analysis expressed by the firm conducting the due diligence review were based on information provided by the Woodards and Lisa Hall.[3] Based on representations made by the Woodards themselves, Rotorcraft executed the SPA on May 10, 2007 thereby purchasing the Woodards' stock in TAS for $8,000,000 plus other forms of consideration.

---

[2] See ROTO 001312-21.
[3] See ROTO 001269-91.

## C. The Woodards' Fraudulent and Criminal Conduct Comes to Light After Execution of the SPA.

13. Before Rotorcraft acquired TAS, the Woodards engaged in a scheme to defraud the United States Government and other non-governmental customers by inflating time sheets to falsely invoice those customers for labor that was never performed by TAS. When the Woodards controlled TAS, TAS employees would submit time cards reflecting the number of hours they worked on each helicopter. Lisa Hall then took those time cards and inputted them into an Excel spreadsheet, which she would typically present to Tim Woodard. At Tim Woodard's instruction and command, Lisa Hall would inflate the number of labor hours and prepare an invoice to send to customers using those inflated hours. That fraudulent inflation occurred in both government and commercial contracts.

14. The United States Government began investigating the fraudulent billing practices employed by TAS at the time the Woodards were at the helm. Faced with an Information revolving around TAS' deliberate and criminal decision to falsely invoice the United States Government for labor never performed on subcontracts TAS secured for the wiring and rewiring of Black Hawk Helicopters for the United States Army, Lisa Hall pled guilty and testified under oath that she was acting pursuant to the Woodards' directions. Tim Woodard's wife offered similar sworn testimony, testifying that "Lisa was given directions by the owners of the company. They had the final decision on the amount of billing." That testimony came in July 2010.

15. Prior to that sworn testimony, the Woodards continually professed that the allegations of fraudulent billings were untrue. In fact, the Woodards made several representations to induce Rotorcraft to execute the SPA back in 2007. Specifically, the Woodards represented that:

- TAS operated in compliance with all laws;

- TAS's financial statements fairly represented the true financial position of TAS;

- there were no developments, events, conditions, or circumstances that had or could have a material adverse effect on TAS;

- TAS had no undisclosed liabilities;

- No documents contained untrue statements of a material fact; and

- TAS and its Shareholders knew of no facts that would materially or adversely affect or threatens the assets, business, prospects, financial condition or results of TAS.

Those representations were false. Armed with Lisa Hall and Olga Woodard's testimony conclusively establishing otherwise, Rotorcraft sought judicial intervention.

**D.    Rotorcraft Filed Suit and Resolved its Claims Through Arbitration**

16.    After Rotorcraft learned of the Woodards' detailed and extensive involvement in that fraudulent activity, it filed suit in the 17th Judicial District Court of Tarrant County, Texas on September 10, 2010, seeking a declaratory judgment that it was entitled to its Indemnifiable Losses and asserting causes of action for fraud and breach of contract, among others. All parties agreed to arbitrate that lawsuit pursuant to the SPA. In its Demand for Arbitration, Rotorcraft sought a declaration from the Arbitration Panel determining that:

(a) the Woodards must indemnify Rotorcraft for all costs, expenses, attorneys' fees, and any fine or penalty related to the ongoing government investigation into TAS's illegal billing practices; (b) the Woodards must indemnify Rotorcraft for all costs, expenses, attorneys' fees, and payments to any third-party, including, but not limited to, other Black Hawk project subcontractors, related to TAS's illegal billing practices; (c) the Woodards must indemnify Rotorcraft for all attorneys' fees and expenses incurred in this connection with this lawsuit and its effort to enforce the SPA; and (d) Rotorcraft is entitled to offset the entire amounts due under the notes.

After hearing the evidence presented during arbitration and considering the parties' pre and post-arbitration briefing, the Arbitration Panel entered an award on April 27, 2011 (the "Arbitrators' Award"). A true and correct copy of the Arbitrators' Award is attached hereto as **Exhibit C.**

<u>CLAIMANT ROTORCRAFT SERVICES GROUP INC.'S DEMAND FOR ARBITRATION</u> - PAGE 6

**E.      The Arbitrators' Award Declared Rotorcraft is Entitled to its Indemnifiable Losses.**

17.      The Arbitrators' Award ultimately concluded that the Woodards materially breached the SPA, fraudulently induced Rotorcraft into executing the SPA, conspired with each other to defraud Rotorcraft, and that Rotorcraft was entitled to a declaratory judgment regarding its indemnity rights under the SPA.

18.      With respect to those indemnity rights, the Arbitration Panel concluded that Rotorcraft "has, and will continue to incur, 'Indemnifiable Losses' as defined in the SPA"[4] but that the Woodards had no obligation to pay any "indemnity amount until an amount of loss can be determined and has been provided by [Rotorcraft] to the Woodards."[5] The Arbitration Panel aptly recognized that assessing the amounts of any Indemnifiable Losses at that time would be premature because "Indemnifiable Losses are continuing and ongoing" and Rotorcraft could not "yet specify, as required, the amount of Indemnifiable Losses."[6] To that end, the Aribtrators' Award simply

> declare[d] that [Rotorcraft] is entitled, at such time as it can determine Indemnifiable Losses with finality and reasonable certainty as defined in the SPA, to the full relief accorded by Article 10 of the SPA. Time and Carl Woodard have a continuing duty and liability, joint and several, to indemnify [Rotorcraft] for all Indemnifiable Losses as hereafter determined in the future pursuant to the procedures of Article 10.[7]

19.      The parties subsequently filed an **Agreed** Motion to Confirm the Arbitrators' Award and a corresponding **Agreed** Order Confirming Arbitrators' Award. Without objection from the Woodards or a request for modification in any respect, the 17th Judicial District Court of Tarrant County, Texas confirmed the Arbitrators' Award and entered the Agreed Order on May 31, 2011. That Agreed Order is now the Final Judgment.

---

[4] Ex. C., p. 7, ¶ 58.
[5] Ex. C., p. 12, ¶ 16.
[6] Ex. C., p. 12, ¶ 17.
[7] Ex. C., p. 12, ¶ 18; Ex. C., p. 15, ¶ 1.

**F.**     **Rotorcraft Determined Some of its Indemnifiable Losses with Finality and Reasonable Certainty and Provided Those Amounts to the Woodards.**

20.     Pursuant to both Article 10 of the SPA and the Arbitrators' Award, Rotorcraft sent several indemnification demands to the Woodards. The demands made to date are as follows:

| Date Submitted | Category of Indemnification Loss | Amount of Indemnification | Interest Through | Total |
|---|---|---|---|---|
| 6/28/11 | Tim Woodard Employment and Commission Agreement | $580,358.08 | $143,397.00 | $723,755.07 |
| 6/28/11 | Attempted Sale Leaseback with WP Carey | $305,263.00 | $83,610.02 | $388,873.02 |
| 8/3/11 | BDO Seidman Losses | $357,995.01 | $92,521.95 | $450,516.96 |
| 8/3/11 | Loan to Tim Woodard | $62,600.00 | $20,686.30 | $83,286.30 |
| 8/15/11 | Interconnect and DCIS Losses | $700,925.91 | $142,228.53 | $843,154.44 |
| 8/22/11 | Reputational and Goodwill Damages | $39,765.77 | $5,696.50 | $45,462.27 |
| *Passim* | Pursuit of Indemnification | $139,607.10 | $5,664.01 | $145,251.11 |
| 6/28/11 | Note Offset | ($300,000) | ($69,895.89) | ($369,895.89) |
| 9/18/12 | Pratt Claims | $985,771.68 | $162,169.26 | $1,147,940.94 |
| **TOTAL NET CLAIM** | | | | |

Thus, Rotorcraft has presented demand payments of at least $3,458,344.22 in Indemnifiable Losses to date. That amount already takes into account an offset to which the Woodards are entitled.[8]

**G.     The Woodards Refuse to Pay a Single $.01 for Rotorcraft's Indemnifiable Losses.**

21.     In contravention of the Arbitrators' Award and the Final Judgment, the Woodards have failed to pay Rotorcraft for any of its noticed Indemnifiable Losses. The Woodards have

---

[8] Rotorcraft acknowledges that the Woodards are entitled to an offset. Pending resolution of claims, Rotorcraft elected to refrain from making payments under a Promissory Note. The Arbitrators' Award did not rescind that Promissory Note. Accordingly, Rotorcraft still owed the outstanding principal and interest.

failed to make a single payment; however, they have not objected to all of the indemnification demands. Rather, the Woodards have only lodged partial (and unfounded) objections to certain Indemnifiable Losses.

22. The Woodards ignore the Arbitrators' Award and Final Judgment's declaration of Rotorcraft's entitlement to its Indemnifiable Losses relating to the Tim Woodard Employment and Commission Agreement. In their August 25, 2011 letter, the Woodards argue that "Rotorcraft has not established any actual damages in connection with the Tim Woodard Employment and Commission Agreement . . . were caused by any actions of the Woodards." To the contrary, the Arbitrators' Award found that Rotorcraft "would not have entered into the Commission Agreement or the amendment thereto if Tim Woodard had disclosed to TAS the fact and extent of the fraudulent billing scheme." Arbitrators' Award, Finding ¶ 68. Thus, the losses attributable to the Tim Woodard Employment and Commission Agreement are related to the Woodards' fraudulent conduct.

23. The Woodards also ignore the Arbitrators' Award and Final Judgment's declaration of Rotorcraft's entitlement to its Indemnifiable Losses relating to the Attempted Sale and Leaseback with WP Carey. On August 25, 2011, the Woodards remarkably argue that "[t]he WP Carey Sale Leaseback was not discontinued as a result of any acts of the Woodards." It is clear, however, that the Attempted Sale Leaseback with WP Carey failed solely because of the Woodards' fraudulent conduct and subsequent unwillingness to incriminate themselves. The Attempted Sale Leaseback with WP Carey failed to close because the parties were unable to obtain audited financial statements of TAS. The parties employed BDO Seidman to audit TAS's financial statements but, when BDO Seidman required that TAS's President and Vice-Chairman for the audited period sign a representation letter verifying that all reported financials were true and correct, TAS's President and Vice-Chairman for the audited period (Tim Woodard) failed to

sign that letter. The Arbitrators' Award left no doubt as to why Tim Woodard failed to sign: "Tim Woodard refused to sign the representation letter because it would incriminate him." Arbitrators' Award, Finding ¶ 63. Tim Woodard's failure to sign that representation letter resulted in BDO Seidman not issuing audited financial statements (*See* Arbitrators' Award, Finding ¶ 64) and in the failure of the Attempted Sale Leaseback with WP Carey. The Woodards' assertion that the failed Sale Leaseback was unrelated to their acts or caused directly by them is blatantly false and is yet another example of the Woodards' attempt to obfuscate the law and rights of other parties.

24. The Woodards also ignore the Arbitrators' Award and Final Judgment's declaration of Rotorcraft's entitlement to its Indemnifiable Losses relating to the DCIS Investigation and Interconnect Lawsuit. In their October 11, 2011 letter, the Woodards lodged unfounded objections to Rotorcraft's demand for payment of Indemnifiable Losses relating to the DCIS Investigation and the Interconnect Lawsuit. The objections are without basis and even contradict themselves. For example, the Woodards agree to indemnify Rotorcraft for legal fees relating to the DCIS and Interconnect matters, but also claim that "[n]one of the alleged expenses in connection with the DCIS Investigation and Interconnect Matters are Indemnifiable Losses pursuant to the SPA" and are not "allowable Indemnifiable Losses pursuant to the Arbitration Award." This not only makes no sense, but it is also contrary to the Arbitrators' Award. Conclusion of Law number 17, for example, specifically identifies the attorney's fees, costs, and other payments made in the DCIS Investigation and Interconnect Lawsuit as Indemnifiable Losses. *See* Arbitrators' Award, Conclusion of Law ¶ 17.

25. The Woodards also ignore the Arbitrators' Award and Final Judgment's declaration of Rotorcraft's entitlement to its Indemnifiable Losses relating to reputational and goodwill damages. In their October 11, 2011 letter, the Woodards argue that "[n]one of the

alleged expenses in connection with the Reputational and Goodwill Damages are Indemnifiable Losses pursuant to the SPA" and are not "allowable Indemnifiable Losses pursuant to the Arbitration Award." Again, this argument ignores and contradicts the Arbitrators' Award, which expressly found that "[t]he Woodards' fraudulent billing scheme has substantially damaged the reputation and goodwill of TAS and [Rotorcraft], but such damage is not quantifiable at this time." Arbitrators' Award, Finding ¶ 56.

26. The Woodards also ignore the Arbitrators' Award and Final Judgment's declaration of Rotorcraft's entitlement to its Indemnifiable Losses relating to the Pratt Claims. The Woodards' fraudulent billing scheme caused both Ron Pratt and Pylon Aviation to stop sending work to TAS that they would have but for the Woodards' criminal conduct. Like all the other Indemnifiable Losses that Rotorcraft has notified the Woodards of, the Woodards have refused to pay any amount for these Indemnifiable Losses relating to Mr. Pratt and Pylon Aviation's election to send work elsewhere solely because of the Woodards' past criminal conduct. There is no question that these losses constitute Indemnifiable Losses, as the parties have expressly stipulated that, under the SPA, Indemnifiable Losses include lost profits damages. Arbitrators' Award, Conclusion of Law ¶ 14.

27. The Woodards also ignore the Arbitrators' Award and Final Judgment's declaration of Rotorcraft's entitlement to its Indemnifiable Losses relating to costs and expenses incurred in pursuit of indemnification. Had it not been for the Woodards' misrepresentations and false warranties in the SPA, Rotorcraft would not have incurred any losses in pursuit of indemnification. Arbitrators' Award, Conclusion of Law ¶ 11. Thus, pursuit-of-indemnification losses fall squarely within those losses that the Woodards are bound to indemnify Rotorcraft from under the terms of the Arbitrators' Award. More specifically, "Tim and Carl Woodard have a continuing duty and liability, joint and several, to indemnify [Rotorcraft] for _all_

*Indemnifiable Losses* as hereafter determined in the future pursuant to the procedures of Article 10, which losses presently are continuing and ongoing." Arbitrators' Award, Conclusion of Law ¶ 18 (emphasis added).

## REQUEST FOR DECLARATORY RELIEF – INDEMNIFICATION AND OFFSET

28.  Rotorcraft hereby incorporates the allegations contained in all preceding paragraphs as if fully set forth herein.

29.  Under the Final Judgment, the Arbitrators' Award and the SPA, the Woodards must indemnify Rotorcraft from and against "all Indemnifiable Losses imposed upon, incurred by or asserted against" Rotorcraft related to any misrepresentation, breach of any warranty by the Woodards, and any document or other item furnished to Rotorcraft in connection with the SPA.

30.  Pursuant to Texas Civil Practice & Remedies Code Chapter 37, Rotorcraft hereby seeks a declaration that:

(a)  Rotorcraft is entitled to its Indemnifiable Losses as soon as such Indemnifiable Losses can be determined by Rotorcraft with finality and reasonable certainty;

(b)  the Woodards must pay Rotorcraft for any of its Indemnifiable Losses within thirty (30) calendar days of receipt of any notification and demand for payment thereof;

(c) the Woodards are jointly and severally liable to Rotorcraft in an amount of $3,458,344.22 for all Indemnifiable Losses expressly noticed to date (including interest through the date of this Demand);

(d)  the Woodards are jointly and severally liable to Rotorcraft for all attorneys' fees and expenses incurred in connection with this arbitration proceeding and its effort to enforce the SPA, the Arbitrators' Award, and the Final Judgment; and

(e)     any future disputes as to categories or amounts of Indemnifiable Losses the Woodards are obligated to pay must be lodged after the Woodards have paid the noticed amounts to Rotorcraft to be held in trust pending resolution of the dispute, and must be pursued in binding arbitration with all costs and expenses to be borne by the Woodards;

31.    Rotorcraft has hired the undersigned law firm to prosecute its claim for declaratory relief. An award of reasonable and necessary attorneys' fees to Rotorcraft would be equitable and just and therefore is authorized by Texas Civil Practice & Remedies Code § 37.009.

<u>REQUEST FOR RELIEF</u>

Claimant Rotorcraft Services Group Inc. requests that the Arbitrator, upon a hearing on the merits, enter an order as follows:

1.    Declaring that

    (a)    Rotorcraft is entitled to its Indemnifiable Losses as soon as such Indemnifiable Losses can be determined by Rotorcraft with finality and reasonable certainty;

    (b)    the Woodards must pay Rotorcraft for any of its Indemnifiable Losses within thirty (30) calendar days of receipt of any notification and demand for payment thereof;

    (c)    the Woodards are jointly and severally liable to Rotorcraft in an amount of $3,458,344.22 for all Indemnifiable Losses expressly noticed to date (including interest through the date of this Demand);

    (d)    the Woodards are jointly and severally liable to Rotorcraft for all attorneys' fees and expenses incurred in connection with this arbitration proceeding and its effort to enforce the SPA, the Arbitrators' Award, and the Final Judgment; and

    (e)    any future disputes as to categories or amounts of Indemnifiable Losses the Woodards are obligated to pay must be lodged after the Woodards have paid the noticed amounts to Rotorcraft to be held in trust pending resolution of the dispute, and must be pursued in

binding arbitration with all costs and expenses to be borne by the Woodards;

2. Awarding Rotorcraft $3,458,344.22 for all Indemnifiable Losses expressly noticed to date (including interest through the date of the Demand);

3. Awarding Rotorcraft additional prejudgment interest from the date of the Demand through the date of the Award signed by the Arbitrator;

4. Awarding Rotorcraft postjudgment interest at the maximum rate allowable by law; and

5. Awarding Rotorcraft all other relief to which it may prove itself justly entitled, whether at law or in equity.

Dated: May 28th, 2013.

Respectfully submitted,

Marshall M. Searcy, Jr
State Bar No. 17955500
Derek Montgomery
State Bar No. 22042264
KELLY, HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: 817-332-2500
Facsimile: 817-878-9280

**ATTORNEYS FOR CLAIMANT ROTORCRAFT SERVICES GROUP, INC.**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been sent to the following counsel of record on the 28th day of May, 2013.

Bruce James, Esq.
Tom Harkins, Esq.
Whitaker, Chalk, Swindle & Sawyer, LLP
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102

Michael E. McCue, Esq.
Meadows, Collier, Reed, Cousins, Crouch & Ungerman, L.L.P.
901 Main Street, Suite 3700
Dallas, Texas 75202

Derek Montgomery

14.11. Counterparts. This Agreement may be executed in any number of counterparts, and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute one and the same instrument.

14.12. Severability. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Agreement or such provision, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

14.13. Waiver of Jury Trial. Each party to this Agreement hereby irrevocably and unconditionally waives to the fullest extend such party may legally and effectively do so, trial by jury in any suit, action, or proceeding arising under this Agreement.

14.14. Governing Law. This Agreement shall be governed and construed as to its validity, interpretation and effect by the laws of the State of Texas notwithstanding the choice of law rules of Texas or any other jurisdiction. In addition, in the case of any dispute under or in connection with this Agreement, each of the parties hereby consents to the exclusive jurisdiction and venue of the courts of the State of Texas or the Federal District Court for such state, provided that such Federal court has subject matter jurisdiction over such dispute, and each of the parties hereby waives any claim such party may have at any time as to forum non conveniens with respect to such venue. Notwithstanding anything to the contrary set forth in the preceding sentence, Acquiror shall have the right to institute any legal action against any of the Shareholders arising out of or relating to this Agreement in any appropriate court and in any jurisdiction where any of the Shareholders is subject to personal jurisdiction and where venue is proper.

14.15. Arbitration. Except as set forth in Section 3.4, the parties hereto agree that binding arbitration shall be the sole means of resolving any claim or dispute under this Agreement or under any other agreement or document to be delivered at the Closing hereunder, except only where (a) a party seeks solely equitable relief and where delay could reasonably be expected to cause irreparable harm, or (b) an award or other relief has been granted in arbitration or by any court of competent jurisdiction and enforcement of such award, judgment, remedy or other order cannot otherwise reasonably be accomplished with any certainty of avoiding substantial harm to the party in whose favor such was granted, or (c) a party hereto wants to join or implead another party hereto in a legal proceeding involving a third Person, in any of which cases such party has the option to pursue such action for appropriate relief in any court of competent jurisdiction. Such arbitration shall be conducted by a panel of three arbitrators selected pursuant to the commercial arbitration rules of the American Arbitration Association at a time and place mutually agreeable to the parties and the arbitrators within the State of Texas; shall be non-appealable; shall be determined by the arbitrators in accordance with the rules of the American Arbitration Association; and the normal rules of evidence contained in the Federal Rules of Civil Procedure shall apply to such proceeding. The arbitrators shall be required to render a written opinion upon which their award is based upon the reasonable request of any party to such proceeding. The award of the arbitrators may be filed in any court as a judgment, including any state or federal court within the State of Texas. The costs of such arbitration shall be shared equally between the Shareholders and Acquiror and each shall pay its own counsel

ROTO_000060

fees unless the arbitrators shall otherwise specifically determine as part of their award. If either party fails to honor or pay any arbitration award within thirty (30) days, the other shall be entitled to interest from such date as part of a court's enforcement of such award.

ROTO_000061

# EXHIBIT 4

**McCue, Michael E.**

**From:** Andrew Barton <BartonA@adr.org>
**Sent:** Wednesday, September 25, 2013 4:48 PM
**To:** McCue, Michael E.; 'Tom Harkins'; 'Bruce L James'; Marshall Searcy; Kathryn Moore;
Nickie Caesar; 'Derek Montgomery'
**Subject:** ARC 71 132 304 13 Arbitrator Challenge Gonzalez Remove 092413

Dear Counsel:

The issue raised by Claimant regarding the objection to the continued service of Arbitrator Gonzalez and responses received were considered by the AAA's Administrative Review Council (Council) on September 24, 2013. After careful consideration of the parties' contentions, the Council has determined that the arbitrator shall be removed in this case. This decision will be made a part of our administrative file.

The AAA's rule on disqualification provides that an arbitrator shall be subject to disqualification for partiality or lack of independence, inability or refusal to perform his or her duties with diligence and in good faith, and any grounds for disqualification provided by applicable law. The Council has carefully reviewed and considered the parties' submissions in this matter, and based upon the Council's Review Standards available at www.adr.org/arc that the parties were previously referred to, the Council has determined that the arbitrator shall be removed in this case.

Further, the council decided that this matter should be heard by a single arbitrator. Accordingly, I will issue a list of arbitrators for the parties consideration from which one will be selected. If you would like to provide input as to the qualifications of the neutral, I will incorporate your suggestions in to my search and attempt to create a list based on those preferences. I can also add to the list, a number of former judges for your consideration. Please let me know at your earliest convenience, but not later than Friday afternoon.



Thank you for your attention,
Andrew

**Andrew Barton**
**Vice President**
American Arbitration Association
18756 Stone Oak Parkway
Suite 200
San Antonio, TX 78258
www.adr.org
T:210 998 5750
F:

The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.



EXHIBIT
15
Woodard

# EXHIBIT 5

352-274417-14



## MEADOWS COLLIER
—— ATTORNEYS AT LAW ——
MEADOWS, COLLIER, REED, COUSINS, CROUCH & UNGERMAN, L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

901 MAIN STREET, SUITE 3700
DALLAS, TEXAS 75202
(214) 744-3700
www.meadowscollier.com

**MICHAEL M. MCCUE, P.C.**
Partner

FAX (214) 747-3732
WATS (800) 451-0093
DIRECT DIAL (214)749-2460
mmccue@meadowscollier.com

September 27, 2013

By email: BartonA@adr.org

Mr. Andrew Barton
American Arbitration Association
18756 Stone Oak Parkway, Ste. 200
San Antonio, TX 78258

Re:  Case No. 70 132 Y 304 13
    *Rotorcraft Services Group, Inc. v. Carl D. Woodard & Timothy D. Woodard*

Dear Mr. Barton

This is in response to your request dated September 25, 2013, for input as to the qualifications of a neutral.

As you know, the parties had a lengthy arbitration which resulted in an Award dated April 27, 2011. Respondents Carl Woodard and Tim Woodard assert that Claimant Rotorcraft's claims almost exclusively seek alleged damages incurred, if at all, prior to the previous arbitration. Respondents assert these claims were either expressly denied by the previous Award, or are now barred based upon *res judicata*, statute of limitations, and other defenses which have been asserted by Respondents. Consequently, Respondents request that the list of arbitrators to be considered be composed entirely of former trial or appellate judges, or at least experienced litigators, who are knowledgeable about Texas law of damages, statute of limitations, *res judicata*, estoppel, and election of remedies.

Respondents also submit that it is much more important that the ultimate arbitrator have the above qualifications than be from the DFW area.

For purposes of the record, Respondents object to AAA's rejection of Justice Raul Gonzalez as the sole arbitrator pursuant to the parties' agreement, and their participation in the selection of a replacement arbitrator and the subsequent arbitration is not a waiver of that objection.



EXHIBIT
16
Woodard

September 27, 2013
Page 2

Thank you.

Very truly yours,

Michael E. McCue
MEADOWS COLLIER REED COUSINS CROUCH
   & UNGERMAN LLP
Attorney for Carl Woodard

Bruce James
Tom Harkins
WHITAKER CHALK SWINDLE & SCHWARTZ PLLC
Attorneys for Tim Woodard

MEM/esc
436093.2.W539.A901

cc:   Tom Harkins, Esq.   /by email
       Marshall Searcy, Esq.   /by email
       Derek Montgomery, Esq.   /by email